IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDREA LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. |
| vs. | ) |
| | ) |
| FLINT COMMUNITY SCHOOLS, | ) HON. |
| SHAMARION GRACE, in her | ) |
| official and individual capacities; | ) |
| PAMELA LAWRENCE, in her | ) |
| official and individual capacities, and | ) |
| SCOTT HENWOOD, in his official | ) |
| and individual capacities. | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |
| | ) |
| Carla D. Aikens (P69530) | ) |
| Austen J. Shearouse (P84852) | ) |
| CARLA D. AIKENS, P.L.C. | ) |
| *Attorneys for Plaintiffs* | ) |
| 615 Griswold St., Ste. 709 | ) |
| Detroit, MI 48226 | ) |
| Tel:  (844) 835-2993 | |
| Fax:  (877) 454-1680 | |
| carla@aikenslawfirm.com | |
| austen@aikenslawfirm.com | |

*There is a pending case filed in this matter 22-cv-13134*

## **COMPLAINT**

PLAINTIFF, ANDREA LEE by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against FLINT COMMUNITY SCHOOLS, SHAMARION GRACE, PAMELA LAWRENCE, and SCOTT HENWOOD, ("Defendants).

## JURY DEMAND

COMES NOW Plaintiff Andrea Lee and hereby demands trial by jury. As for her Complaint against Defendants, Plaintiff, Andrea Lee, states that:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a resident of Howell, Michigan who was hired by Defendants to work at Holmes Middle School on or about August 22, 2022.

2.      Defendant Flint Community School ("FCS") is a quasi-municipal corporation whose principal place of business is located at 923 East Kearsley Street, Flint, Michigan 48503. Learning Support Services is a department within the school system.

3.      Defendant Shamarion Grace is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant FCS.

4. Defendant Pamela Lawrence is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant FCS.

5. Defendant Scott Henwood is and was at all relevant times an employee acting in his individual capacity and under color of state law for Defendant FCS.

6. Jurisdiction is proper because on the basis of federal question jurisdiction pursuant to 29 U.S.C. § 206 and diversity pursuant to 28 U.S.C. § 1332.

7. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 1331, and 42 U.S.C. § 1983 ("Section 1983").

8. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, Section 1983; and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this Court pursuant to 29 U.S.C. § 216, and Section 1983, because the violations of giving rise to Plaintiff's claims occurred in this district.

10. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## GENERAL ALLEGATIONS

11.     Ms. Andrea Lee began working for Flint Community Schools at Holmes Middle School, through a contract with Soliant Health, LLC ("Soliant"), on August 22, 2022.

12.     Ms. Lee's title was "resource room teacher"/special education teacher.

13.     The population of children for whom Ms. Lee was the instructor was educationally identified as students with disabilities and/or special needs, identified as individuals diagnosed or suspected of having a disability.

14.     Under federal and state law, the failure to meet the individual educational needs of the disabled violates Section 504 of the Rehabilitation Act, which includes the implementation of individualized education programs ("IEP's").

15.     Soliant contracted with Ms. Lee to work for Defendant Flint Community Schools, who then took over the day-to-day supervision, direction, and oversight of Ms. Lee, rendering her an employee of both Soliant and Defendant Flint Community Schools.

16.     Ms. Lee accepted a position and began negotiating the terms of her employment.

17.     Upon information and belief, the Defendant Flint Community Schools lowered the pay for the position, which caused Soliant to ask Ms. Lee to take less money than originally offered for the position.

18.     Further, an employee for Soliant stated such behavior was unusual and that employees' attempts to investigate were being stonewalled at every turn.

19.     These joint efforts between Soliant and Defendant Flint Community Schools contributed to the hostile work environment, as described in this Complaint.

20.     Upon information and belief, this employment situation continued throughout the entirety of the incidents complained of herein.

21.     Ms. Lee worked for the school for about a month before she was involuntarily transferred to another school.

22.     Within this month, Ms. Lee was put in very difficult positions, which made her feel uncomfortable and question the actions and morals of the school, as they continued to be in non-compliance with the law.

23.     The first occasion that displayed the non-compliance is when Ms. Lee noticed that the students with identified special needs and disabilities were not receiving services based on the terms stated in the IEP documents and the school was not interested in legitimately bringing the files up to compliance status.

24.     On or about August 31, 2022, Defendants and its Learning Support Services Department ("LSS") were informed of the student IEPs being in non-compliance with state law.

25. On September 1, 2022, Ms. Lee provided an email statement of the meeting events as requested by Defendants through their agents and completed a Google Document form, requested by the principal Defendant Henwood,

26. The Medicaid forms, provided by the district, for reimbursement were being misused/misrepresented, as the children were not given the services necessary as identified students with special needs.

27. Ms. Lee attempted to meet with Ms. Lawrence, the acting director for LSS, but both meetings were canceled.

28. On or about September 14, 2022, Ms. Lee, Ms. Moore, assistant principal, and Defendant Henwood, principal, met to discuss the non-compliance.

29. Ms. Lee was asked by both individuals to continue with the non-compliant behavior.

30. Ms. Lee reminded both individuals about non-compliance with IEP cases.

31. The principal called Ms. Lawrence and she agreed to come at 1:00 pm.

32. During this meeting, Ms. Lee told the group about the issues, non-compliance, the matter of opening the IEPs due to not as expected in progress reports, and the 2 IEP case matters.

33. Despite bringing up all these issues, Ms. Lawrence said she would cancel the IEP meeting for the next day.

34.     Ms. Lee spoke with Courtney Allen, Soliant Recruiter, to inform her of what happened and Ms. Lee drove home crying.

35.     On or about September 15, 2022, Ms. Lee returned to work and received a text message that the district sent an email about a transfer.

36.     Ms. Lee was concerned she was being terminated.

37.     That same day, Ms. Lawrence stated that Ms. Lee was being transferred to an elementary school with no say or input from Ms. Lee.

38.     Ms. Lee was further prohibited, after the transfer, from looking at any child's file that was not specifically on her new caseload.

39.     Ms. Massie, administrative assistant for LSS, called later that day stating that the communication was complete, and Ms. Lee must report to the elementary school the following day.

40.     Following this incident, Ms. Lee requested that Soliant ask for performance feedback.

41.     Soliant had not received any feedback, as Ms. Courtney Allen asked the district several times and had never heard back from the district.

42.     Ms. Lee was locked out of vital educational application programs and fought hard to gain access.

43.     Soliant, the elementary principal, and Chris Card were notified of the situation.

44.     After several emails that included the previously-named people, the LSS department finally gave Ms. Lee the designation of "LIMITED ACCESS."

45.     This was still an issue because she could not provide the legal documentation for the SPED position.

46.     There was no system for Ms. Lee to document student progress probes, and she facilitated that process by offering a form to complete such tasks.

47.     Ms. Lee still could not upload the form information because she did not have access to the needed programs.

48.     Ms. Lee, while handling an issue with a student, discovered that the district was out-of-compliance.

49.     On Tuesday, September 27, 2022, Ms. Lee asked questions regarding a student's regression due to Defendant's failure to offer the services necessary for progress.

50.     The failure became so severe that the student in question lost progress, which severely hampered their ability to progress in their education.

51.      Upon information and belief, Defendant FCS attempted to keep said student enrolled during a period of time in which that student no longer attended the school, due to the poor quality of service, or complete lack thereof.

52.     Upon this student's return, the regression had become too severe for the services available and progress issues were discovered in their file.

53. Upon information and belief, Defendant kept said student enrolled because the school was close to closing due to lack of enrollment.

54. During this time, Plaintiff found additional information that concerned her. She was later given a new curriculum that was expected to be taught to the students the following Monday.

55. This further concerned Ms. Lee, as this was not enough time to learn the material and adequately instruct the students.

56. Ms. Lee spoke to another first-grade teacher about the length of time she had to work with SFA, the school curriculum, and her concerns for preparation.

57. It was made known that the school had worked with the curriculum for about three years.

58. Ms. Lee again stated that she did not believe she had enough time to understand the information to teach the students, to which the teacher responded "Whoa, slow down there. It's not that big of a deal just do it."

59. There was no curriculum for Ms. Lee to teach.

60. Plaintiff spoke with the principal, Dr. Grace, about it, and she called the assistant LSS director Teleah Brown, who informed her that there was no established curriculum for reading or math.

61.     The assistant LSS director finally stated that she would order a specific program (Sonday System Reading), but she did not know when it would arrive, so Ms. Lee needed to come up with a backup plan.

62.     Ms. Lee clarified that the district wanted her to create a curriculum, and the principal motioned nodded her head in agreement.

63.     Dr. Grace was informed that Ms. Lee would need time to complete the task, and she stated that she understood.

64.     Immediately after this meeting, Dr. Grace began pushing Ms. Lee to provide "pull-out" services, which was nearly impossible given the circumstances.

65.     Later, while in her classroom, the "para pro" for the first-grade student walked into Plaintiff's classroom.

66.     Ms. Lee asked the para pro what the student could do so that she could plan for the first "pull-out" appointment.

67.     The para pro became upset that Ms. Lee asked her the question and Ms. Lee explained that she would like to obtain her insight on the student since they spent a lot of time together.

68.     The para pro then stated she had to go and left Ms. Lee without any answers.

69. The same first grade teacher that Ms. Lee brought up issues with the curriculum and preparation, told Ms. Lee that it was not the para pro's job to tell or explain anything to her.

70. Ms. Lee explained that the para pro had done so before.

71. The first-grade teacher began speaking loudly while approaching Ms. Lee, stating what she had before, and that Ms. Lee was being hostile and should see her after her meeting.

72. The first-grade teacher then walked out, slamming the door behind her.

73. After the above incident, Ms. Lee began to feel as if she would have a nervous breakdown and needed to leave.

74. Ms. Lee contacted Soliant and discussed this matter further, and it was decided that Ms. Lee would turn her key in and leave the premises. Ms. Lee's laptop was left in her classroom desk.

75. On her way home, Soliant called to inform Ms. Lee that its parent company and/or Defendant had requested the laptop be brought, in person, to the administration building.

76. The Soliant employee and Ms. Lee both agreed that would not be in Ms. Lee's best interest to go back into the building.

77. Ms. Lee went to the front office to turn in her key and have a conversation with the principal.

78. Upon walking into the office, Plaintiff heard the first-grade teacher telling the principal that Ms. Lee was being inappropriate, among other things.

79. Ms. Lee then walked in after hearing these things and placed the key on the desk, letting the principal know that she was not a good fit for the school, and she left the premises.

80. On Ms. Lee's first day at the elementary school, she told the new principal what had happened at the prior location, and she stated that she would never ask Ms. Lee to do such things.

81. There was no direction in this position, and Defendants left Ms. Lee to be on her own with no building or SPED mentor to help guide the position.

82. During the curriculum phone calls, Ms. Lee even asked to be introduced to other elementary school SPED teachers to figure out what other SPED teachers were doing, but her requests were denied.

83. The previous person who had her position stated that she had another person write the IEPs because she noticed "certain situations" that continuously arose because the schools "did not care."

84. Defendant created an environment where Ms. Lee was expected to complete impossible tasks at the elementary school level and left her feeling like she was set up to intentionally fail.

85. Plaintiff asserts that she experienced a hostile work environment/harassment and retaliation for engaging in protected activity, as set forth herein, eventually leading to her constructive termination, and she seeks redress for the same as follows.

## COUNT I

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AS TO DEFENDANT FCS

86. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

87. Plaintiff is a qualified individual who has opposed discrimination against students who were supposed to be recipients of IEPs, who were disabled, or suspected of having a disability, including misuse of funds related to programming for the same, pursuant to § 504.

88. Defendant FCS is a recipient of federal funds.

89. Section 504 of the Rehabilitation Act protects advocacy on behalf of disabled students as it relates to their civil rights.

90. Advocating for disabled students, as Plaintiff did, is a protected activity and retaliation for such advocacy is prohibited under Section 504 of the Rehabilitation Act.

91. As stated herein, Plaintiff engaged in the protected activity of complaining to Defendants and their agents that the disabled, or suspected to be

disabled, students with IEPs were not receiving proper services to educate them, and that she was not being given the proper tools to instruct them in accordance with their IEPs, which was contrary to law.

91. By the acts and failures of Defendant, as stated herein, Defendant deliberately and/or recklessly harassed and constructively discharged Plaintiff – transferring her from school to school – from working for Defendant FCS because of her engagement in protected activity, including but not limited to:

    a. Subjecting Ms. Lee to severe or pervasive retaliatory harassment by a supervisor,

    b. Creating an atmosphere of unworkable hostility at Ms. Lee's workplace;

    c. Limited access to progress programs necessary for her role;

    d. Transferring her to an elementary school without discussion or choice;

    e. Creating an environment where Ms. Lee is set up for failure; and

    f. Ignoring systemic issues of non-compliance with regulations and forcing Ms. Lee to be complicit in their cover-up;

    g. Forcing unattainable deadlines on Ms. Lee for the creation of a new curriculum;

    h. Prohibiting Ms. Lee from looking at any of her pre-transfer files; and

    i. Constructively terminating her.

92. Such harassment and constructive termination were by reason of Plaintiff's advocacy for the civil rights of disabled students, in violation of Section 504.

93. As a direct and proximate result of Defendant's deliberate and intentional actions and violations as described above, Plaintiff was harassed and had her employment constructively terminated.

94. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered indignities, humiliation, and emotional distress, and other damages to be adduced at trial.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE II OF THE ADA AGAINST DEFENDANT FCS

95. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

96. Plaintiff is a protected individual under Title II of the ADA in that she opposed discrimination on behalf of disabled and/or suspected to be disabled students.

97. Title II of the ADA protects individuals who engage in protected activity by advocating for the rights of disabled students from discrimination, retaliation and harassment.

98.    By the acts and failures of Defendant FCS and its agents alleged herein, Defendant FCS violated Title II of the ADA because they harassed and constructively terminated Plaintiff in retaliation for her speaking up about its policies and procedures that were discriminatory against disabled and/or suspected to be disabled students.

99.    As stated herein, Plaintiff engaged in the protected activity of complaining to Defendants and their agents that the disabled, or suspected to be disabled, students with IEPs were not receiving proper services to educate them, and that she was not being given the proper tools to instruct them in accordance with their IEPs, which was contrary to law.

100.    By the acts and failures of Defendant, as stated herein, Defendant deliberately and/or recklessly harassed and constructively discharged Plaintiff – transferring her from school to school – from working for Defendant FCS because of her engagement in protected activity, including but not limited to:

    a.  Subjecting Ms. Lee to severe or pervasive retaliatory harassment by a supervisor,

    b.  Creating an atmosphere of unworkable hostility at Ms. Lee's workplace;

    c.  Limited access to progress programs necessary for her role;

    d.  Transferring her to an elementary school without discussion or choice;

e. Creating an environment where Ms. Lee is set up for failure; and

f. Ignoring systemic issues of non-compliance with regulations and forcing Ms. Lee to be complicit in their cover-up;

g. Forcing unattainable deadlines on Ms. Lee for the creation of a new curriculum;

h. Prohibiting Ms. Lee from looking at any of her pre-transfer files; and

i. Constructively terminating her.

101. Such harassment and constructive termination were by reason of Plaintiff's advocacy for the civil rights of disabled students, in violation of Title II of the ADA.

102. As a direct and proximate result of Defendant's deliberate and intentional actions and violations as described above, Plaintiff was harassed and had her unemployment constructively terminated.

103. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff suffered indignities, humiliation, and emotional distress, and other damages to be adduced at trial.

## COUNT III

## VIOLATION OF 42 USC § 1983 as to GRACE, LAWRENCE and HENWOOD (RETALIATION/FIRST AMENDMENT)

104. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

105. Defendants at all times relevant to this action were acting both in their individual capacities and under color of state law with respect to their supervising and authority over Plaintiff's work.

106. Defendants mistreated and harassed Plaintiff, including transferring her and eventually constructively terminating her, in substantial part because of Plaintiff complained of Defendant FCS and Defendants' violation of the civil rights of disabled students, and complained that she was being harassed because of her advocacy.

107. Defendants unlawfully deprived Plaintiff of her civil rights, in violation of her constitutional, state and federal law, and First Amendment rights to be free from interference with and retaliation for protected speech.

108. Plaintiff had a right to free speech, to complain about Defendants' misconduct as it related to the provision of services for disabled students with IEPs.

109. Defendants' individual conduct was pursuant to a practice of Defendant FCS which does not protect free speech and which turns a blind eye toward retaliation for protected speech and other unconstitutional and illegal conduct by its employees.

110. Defendant FCS, with actual knowledge of the injuries to Plaintiff, refused to investigate this matter or to punish any of the individual Defendants for their unlawful conduct which Plaintiff reported.

111.   Defendant FCS, on other occasions, and as a long standing practice, fails to investigate, train and punish harassment, discrimination and retaliation for protected speech by its employees as it relates to IEPs for students.

112.   Defendant FCS failed to train supervisors to recognize protected speech, and to prevent harassment and retaliation for protected speech.

113.   As a direct and proximate result of the conduct of Defendants, in their individual and official capacities, Plaintiff suffered injuries and damages as set forth hereinabove.

## COUNT IV

## RETALIATION IN VIOLATION OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA") AGAINST ALL DEFENDANTS

114.   Ms. Lee incorporates by reference all allegations in the proceeding paragraphs.

115.   At all material times, Ms. Lee was an employee, and Defendants were employers covered by, and within the meaning of, the Persons With Disabilities Civil Rights Act, MCL 37.1101 et seq.

116.   Defendants' conduct, as alleged herein, violated the PWDCRA., which makes it unlawful to retaliate against an employee who has engaged in protected activity.

117. A respondeat superior relationship existed because Defendants employees Defendants Henwood, Lawrence, and Grace, and Ms. Moore, and Teleah Brown, had the ability to undertake or recommend tangible decisions affecting Ms. Lee or the authority to direct Ms. Lee daily work activity, as alleged in the statement of facts.

118. Defendants Grace, Henwood, and Lawrence are also directly liable for their conduct herein.

119. Ms. Lee engaged in protected activity when she took the following actions including but not limited to repeatedly bringing attention to non-compliant actions involving the disabled, or suspected to be disabled, student's IEPs against Defendant.

120. Defendants had knowledge that Ms. Lee engaged in protected behavior, because Ms. Lee repeated contacted Defendant Flint Community School's Learning Support Services ("LSS") division, sent correspondence to the acting director of LSS Defendant Lawrence, and spoke with Ms. Moore, Teleah Brown, Defendant Grace, the assistant principal, and Mr. Henwood, the principal.

121. After Ms. Lee engaged in protected activity, Defendants and their agents thereafter harassed Ms. Lee and took several adverse employment actions against Ms. Lee because of that activity, as alleged in the statement of facts and

herein, subjecting Ms. Lee to severe or pervasive retaliatory harassment by a supervisor, including but not limited to:

a. Creating an atmosphere of unworkable hostility at Ms. Lee's workplace;

b. Limited access to progress programs necessary for her role;

c. Transferring her to an elementary school without discussion or choice;

d. Creating an environment where Ms. Lee is set up for failure; and

e. Ignoring systemic issues of non-compliance with regulations and forcing Ms. Lee to be complicit in their cover-up;

f. Forcing unattainable deadlines on Ms. Lee for the creation of a new curriculum;

g. Prohibiting Ms. Lee from looking at any of her pre-transfer files; and

h. Constructively terminating her.

122. Defendants and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Lee's rights.

123. Ms. Lee notified Defendants and their agents of the aggressive and hostile behavior and Defendants failed to take action in regards to the mentioned behavior.

124.    As a proximate result of the Defendants' actions, Ms. Lee has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

125.    As a result of those actions and consequent harms, Ms. Lee has suffered such damages in an amount to be proven at trial. Ms. Lee requests relief as described in the Prayer for Relief below.

## COUNT V

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PWDCRA

126.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

127.    At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the PWDCRA.

128.    A respondeat superior relationship existed because Defendants and their agents had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

129.    Defendant's conduct, as alleged herein, violated the PWDCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

130. Plaintiff's work environment was hostile because she had engaged in the protected activity of speaking up about Defendant's misconduct regarding disabled and/or perceived to be disabled students.

131. Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

132. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendants' ability to accuse Plaintiff of misbehaving made the situation untenable.

133. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

134. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

135. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

136. Plaintiff requests relief as described in the Prayer for Relief below.

## **COUNT VII**

## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

137. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

138. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge. They are:

    a. explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

    b. where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

    c. where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

139. Plaintiff's constructive discharge came as the result of her fearing for her mental health as a result of Defendants' unwillingness to remedy the atmosphere and illegalities as to the IEPs, as conferred by well-established legislative enactments, specifically including, but not limited to the ADA, the PWDCRA, Section 504 of the Rehabilitation Act.

140. Moreover, every statute mentioned in the preceding paragraph contains explicit language that prohibits the discharge, discipline, or other adverse treatment

of Plaintiff. However, Defendant retaliated against Plaintiff for attempting to protect her rights as set forth in the statutes.

141. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

142. Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

PLAINTIFF, ANDREA LEE, RESPECTFULLY REQUESTS that their Court enter judgment against Defendants as follows:

1.    Actual damages in whatever amount to which Plaintiff is entitled;

2.    Exemplary damages in whatever amount to which Plaintiff is entitled;

3.    An award of interest, costs, and reasonable attorney fees; and

4.    An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  November 9, 2023

Respectfully Submitted,

/s/ Carla D. Aikens_____
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)

CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com